UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LUIS RAMIREZ,

                            Plaintiff,                    **REPORT AND**
                                                    **RECOMMENDATION**

              -against-                    CV 19-3087 (JMA)(AYS)

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                            Defendant.
------------------------------------------------------------X

**APPEARANCES:**

STANTON, GUZMAN & MILLER, LLP
Attorneys for Plaintiff
BY: STACEY R. GUZMAN, ESQ.
820 Hempstead Turnpike
Franklin Square, New York 11010

THE UNITED STATES ATTORNEY'S OFFICE, E.D.N.Y.
Attorneys for Defendant
BY: MATTHEW J. MODAFFERI, AUSA.
271 Cadman Plaza East, 7th Floor
Brooklyn, New York 11201

**SHIELDS, Magistrate Judge:**

      Plaintiff, Luis Ramirez ("Ramirez" or "Plaintiff"), a former maintenance worker, food

delivery person, and stocker for a winery/liquor store, commenced this action pursuant to 42

U.S.C. § 405(g) for review of the final decision of Nancy A. Berryhill, the Acting Commissioner

of the Social Security Administration (the "Commissioner" or "Defendant"), finding that

Appellant is not entitled to disability insurance benefits under Title II of the Social Security Act

(the "Act").

      The Honorable Joan M. Azrack referred to this Court cross-motions for a judgment on

the pleadings (Docket Entry ("DE") [12] [14]) pursuant to Federal Rules of Civil Procedure

("Fed. R. Civ. P.") 12(c) for Report and Recommendation. See Referral Order dated 12/21/2020. For the reasons set forth below, this Court respectfully recommends that Plaintiff's motion for judgment on the pleadings be granted and Defendant's cross-motion for judgment on the pleadings be denied. The Court further recommends that this case be remanded to the Commissioner for further proceedings in accordance with this Report and Recommendation.

## BACKGROUND

The facts of this case are drawn principally from Plaintiff's Complaint ("Complaint") and the Administrative Record ("AR.").

I.    Plaintiff's Background and Alleged Impairments

A.    Medical History Prior to Plaintiff's Alleged Disability Onset Date (January 1, 2015)

Plaintiff was born on September 27, 1974 and was 40 years old[1] during the alleged onset of his disability. AR. 46, 237. Plaintiff graduated from high school in El Salvador and has past relevant work in maintenance/cleaning, food delivery, and as a stocker. AR. 48, 268, 297.

On September 23, 2013, Plaintiff visited internist Aleem Ali, M.D. ("Dr. Ali"), at Mercy Medical Center for complaints of back pain and an annual examination. AR. 331-35. Plaintiff reported that on August 16, 2013, he fell while at work and hurt his lower back and knees. AR. 331, 335. Plaintiff complained of dull occipital head pain, mostly in the afternoon, and cracking noise and pain in his neck since the fall. AR. 331, 335. Dr. Ali diagnosed Plaintiff with knee and back pain. AR. 331. Dr. Ali noted that Plaintiff was currently taking Tylenol, Ibuprofen, lidocaine and using cold pack, and prescribed the Plaintiff Baclofen. AR. 331. Dr. Ali also

---

[1]. At the January 18, 2018 hearing, Plaintiff amended his alleged onset date to January 1, 2015. AR. 46.

ordered x-rays of Plaintiff's knees, lumbar spine, and cervical spine. AR. 332. In a letter dated September 26, 2013, Dr Ali stated that he examined Plaintiff the preceding day and that Plaintiff was currently unable to return to work. AR. 337.when she began working as a bus driver. AR. 175.

On October 9, 2013, Plaintiff was referred for physical therapy by Dr. Ali due to knee pain and also referred to an orthopedic surgeon due to neck and knee pain following his injury. AR. 338-39. On October 25, 2013, Dr. Ali again referred Plaintiff to an orthopedic surgeon due to neck and knee pain following his injury. AR. 343. Dr. Ali noted an associate diagnosis of back pain and noted that Plaintiff would bring in the results of pending MRIs of his neck and knee. AR. 343. On November 4, 2013, Laura Pelrigliano, registered nurse manager, wrote a letter stating that Plaintiff was "NOT cleared to return to work" and would be re-evaluated by Dr. Ali on November 27, 2013. AR. 345.

A November 23, 2013 MRI of Plaintiff's left knee showed a tear that extended to the inferior articular surface in the posterior horn of the medial meniscus and a small semi-membranous bursitis. AR. 472. In a letter written on November 27, 2013, Dr. Ali stated that Plaintiff still experienced back pain and ordered an MRI of Plaintiff's back. AR. 346. Dr. Ali stated that Plaintiff "may get clearance to return to work" the following week if the "MRI of his back is normal," and noted that Plaintiff would need to follow-up with "orthopedic." AR. 346.

On June 26, 2014, orthopedic surgeon Kenneth McCulloch, M.D. ("Dr. McCulloch"), at New Horizon Surgical Center performed an arthroscopic partial medial meniscectomy and synovectomy on Plaintiff's left knee. AR. 347-71. Plaintiff was in stable condition after the surgery. AR. 348.

Plaintiff received care at Chiropractic Pain Solutions for complaints of pain his cervical spine, lumbar spine, and sacrum from February 25, 2014 – October 31, 2014. AR. 372-78. From March 26, 2014 – September 27, 2014, Plaintiff received care at Cypress Acupuncture for complaints of pain in his neck, back, knee, and – on one occasion – his shoulder. AR. 379-416.

B.    Medical History Subsequent to Plaintiff's Alleged Disability Onset Date

On February 3, 2015, Plaintiff saw Dr. McCulloch to evaluate a possible tear of his meniscus. AR. 474. Plaintiff complained of continued pain in his knee, which he described as tingling and radiated down the back of his calf to his foot. Id. Plaintiff reported a history of herniated discs in his lumbar spine. Id. When examined, Plaintiff's left knee exhibited mild joint line tenderness to palpation medially with a negative McMurray Test. Id. Dr. McCulloch assessed left knee mild post-traumatic arthritis and recommended evaluation by a pain management specialist for further treatment of Plaintiff's lumbar spine. Id. On May 8, 2015, Dr. McCulloch's assessment was similar except that, upon physical examination, Dr. McCulloch noted a "mildly positive" McMurray's Test and straight leg raise, as well as intact sensation. AR. 475. Dr. McCulloch noted that a repeat MRI of Plaintiff's knee was negative for a re-tear of the meniscus. Id. Dr. McCulloch recommended an MRI or Plaintiff's lumbar spine and evaluation by a pain management specialist because of radicular symptoms. Id. He stated that until the MRI and further treatment decisions based on its results, Plaintiff "was permitted to return to work." Id.

On June 12, 2015, Plaintiff visited Dr. McCulloch again, reporting that his left knee failed to improve with conservative measures. AR. 476. Upon physical examination, Plaintiff's left knee exhibited mild medial joint line tenderness to palpation with negative anterior drawer, as well as negative McMurray and Lachman tests. Id. Dr. McCulloch noted decreased sensation

in the L5-S1 of the left lower extremity compared to the right side, a positive straight leg raise, and paraspinal tenderness to palpation. Id. The MRI of Plaintiff's spine showed disc herniation at the L2-L3, L4-L5, and L5-S1 of the lumbar spine. Id. Dr. McCulloch assessed lumbar radiculopathy of traumatic onset and recommended pain management for possible epidural steroid injections. AR. 476. Dr. McCulloch also noted that he personally wanted to view the results from Plaintiff's left knee MRI, which a radiologist interpreted as not showing a re-tear of the meniscus in Plaintiff's left knee. Id.

On July 14, 2015, physiatrist Ali Guy, M.D. ("Dr. Guy"), evaluated Plaintiff on Dr. McCulloch's referral. AR. 417. Dr. Guy noted that June 26, 2013 MRI of Plaintiff's left knee showed status post partial meniscectomy with medial compartment articular cartilage degeneration and that a May 29, 2015 MRI of Plaintiff's lumbar spine revealed L5-S1 disc herniation, L2-L3 disc herniation, and L3-L4 disc bulge. Id. Plaintiff reported to Dr. Guy that he felt well until an August 16, 2013 slip and fall accident at work, which injured his neck, back and both knees. Id. Plaintiff indicated that he thought he would get better after the fall but, instead, he got progressively worse. AR. 417. Plaintiff shared that he returned to work in January 2014 and worked until his June 26, 2014 knee surgery. Id. Plaintiff reported to Dr. Guy that he "has been working on and off," but not since the prior day because of the severity of pain in his knees, neck and lower back. Id. Plaintiff complained of lower back pain that radiated down his left lower extremity with numbness and tingling, as well as knee and neck pain. Id.

Plaintiff saw Dr. McCulloch on August 10, 2015 and there were no new developments in the results of Plaintiff's physical examination except for a positive McMurray's Test. AR. 476-77. Dr. McCulloch reviewed the MRI of Plaintiff's left knee and a noted a horizontal tear in the remnant of the posterior form of the medial meniscus and evidence of a medial meniscus tear

with horizontal or oblique component. AR. 477.Dr. McCulloch noted that the articular surfaces appeared "well maintained." Id. He recommended an arthroscopic debridement of the meniscus, which Plaintiff agreed to. Id. Dr. McCulloch also noted that he would have a radiologist review Plaintiff's MRI as there appeared to be evidence of a re-tear of the medial meniscus. AR. 477-78.

On August 18, 2015, Plaintiff visited Dr. Guy and complained of lower back pain that was constant and caused tingling in his buttocks. As well as localized neck pain and pain in his left knee. AR. 418. Upon examination, Dr. Guy found that Plaintiff's neck exhibited tenderness and spasm at multiple trigger points, limited range of motion, and a positive Spurling Test. Id. Plaintiff's back also exhibited tenderness at multiple trigger points, limited range of motion and spasm. Id. Plaintiff's left knee exhibited tenderness and his gait was antalgic. Id.

Plaintiff received epidural steroid injections on August 21, 2015 and on August 25, 2015, reported to Dr. Guy he had 85% pain relief. AR. 419. His back exhibited tenderness and spasms at multiple trigger points and limited range of motion with positive straight leg tests at 80 degrees. AR. 419, 469. Plaintiff's gait was normal. AR. 419. On September 29, 2015, Plaintiff reported to Dr. Guy 355 relief following epidural steroid injections on September 25, 2015. AR. 420. Plaintiff reported pain in his back, neck, and knee. Id. Upon examination. His neck exhibited tenderness and spasm at multiple trigger points and limited range of motion, and Spurling Test was positive. Id. Plaintiff's back exhibited tenderness and spasms at multiple trigger points and limited range of motion with positive straight leg tests at 80 degrees. Id. Plaintiff's gait was normal. Id.

Plaintiff commenced physical therapy at Yellowstone Medical Rehabilitation ("Yellowstone") for his left knee on October 13, 2015 and continued through November 2015. AR. 433-436. Plaintiff exhibited muscle tightness and tenderness, normal range of motion, and

normal manual muscle strength. AR. 433. Out of a scale of ten, Plaintiff rated his pain at a 4 to 5. Id. A physical therapist recommended hot/cold packs, therapeutic exercise, and mobilization of the soft tissue. Id. The remainder of Plaintiff's physical therapy appointments were substantially similar to his first. AR. 433-36.

On October 27, 2015, Plaintiff saw Dr. Guy and reported 85% pain relief after epidural steroid injections on October 23. AR. 421. Yet, Plaintiff still complained of pain in his neck, knees, and lower back. Id. Upon examination, Plaintiff's neck and back exhibited tenderness and spasms at multiple trigger points, as well as limited range of motion. Id. Plaintiff's gait was antalgic. Id.

On November 25, 2015, Syeda Asad, M.D. ("Dr. Asad"), nuclear medicine, conducted a consultative orthopedic examination. AR. 422-25. Plaintiff complained of constant sharp lower back pain, sometimes throbbing and radiated to his left lower extremity, and for which he reportedly received physical therapy, acupuncture, and three injections. AR. 422. Plaintiff also noted bilateral knee pain that he described as aching, made worse with walking, and relieved with Tylenol. Id. Plaintiff reported undergoing left knee arthroscopic surgery in 2014. Id. Plaintiff also complained of neck pain that he described as sharp, localized and relieved by Tylenol. Id. Plaintiff reported having an MRI of his lumbar spine but did not know the results. Id. Plaintiff told Dr. Asad that he did not cook, clean, wash laundry, or shop because of pain, but showered and dressed himself daily. AR. 423. Plaintiff reported that he watched television and listened to the radio. Id.

After a physical examination, Dr. Asad found that Plaintiff was in no acute distress, had a normal gait and station, and did not use an assistive device. AR. 423. Plaintiff could walk on his heels and toes with minimal difficulty, could squat halfway, needed no help changing for the

examination or getting on/off the examination table, and was able to rise from his chair without difficulty. Id. Plaintiff's hand and finger dexterity was intact and he had full grip strength. Id. His cervical spine was normal, with no trigger points or spasm and full range of motion. Id. His upper extremities were also normal, with no muscle atrophy. Id. Plaintiff's lumbar spine and left knee range of motion were limited. AR. 424. Plaintiff exhibited no spinal tenderness or spasm and his straight leg test was negative. Id. Dr. Asad diagnosed lower back pain, neck pain, and knee pain. Id. He also noted that Plaintiff had mild limitations for squatting, kneeling, bending, walking, and standing for a long time due to lower back pain and left knee pain. Id. He opined that Plaintiff had no limitations for activities requiring cervical maneuver or lifting, carrying, or pushing objects. Id.

In an effort to treat complaints of localized lower back pain made worse with extension and rotation, on December 18, 2015, Dr. Guy administered steroid injections to Plaintiff's lumbar spine. AR. 445-49. Dr. Guy noted that Plaintiff failed to respond to physical therapy and pain medication and the injections were administered for pain management and diagnostic purposes. AR. 445. On December 29, 2015, Plaintiff reported 80% pain relief from the injections and denied any side effects. AR. 450.  Plaintiff complained of lower back pain that radiated to his buttocks, bilateral knee pain and neck pain that radiated to his Trapezius. Id. Upon examination, Plaintiff's neck and back exhibited tenderness and spasms at multiple trigger points as well as limited range of motion with positive straight leg tests. Id. Plaintiff's gait was antalgic. Id.

From January 2, 2016 through March 3, 2016, Plaintiff received treatment at Cypress Acupuncture. AR. 427-30. From February 2016 through March 2016, Plaintiff also attended physical therapy at Yellowstone for his left knee. AR. 438-40. From May 5, 2016 through

8

August 15, 2016, Plaintiff received treatment at Chiropractic Solutions for his cervical spine, lumbar spine, and sacrum. AR. 442-43. Improvement was noted on May 5, 2016 and May 16, 2016. AR. 442. However, only minimal improvement was noted on August 5, 2016. AR. 443.

Plaintiff saw Dr. Guy on May 13, 2016 with complaints of lower back and left knee pain. AR. 451. Upon examination, Plaintiff's back exhibited tenderness and spasms at multiple trigger points, as well a s limited range of motion, and his left knee exhibited tenderness. AR. 450. Plaintiff's gait was antalgic and a straight leg test was positive. Id. Dr. Guy opined that Plaintiff was "totally disabled" and prescribed medication to treat his pain. AR. 451-52.

On April 11, 2017, Plaintiff saw Dr. Guy and complained of pain in his lower back and left knee. AR. 458. Upon examination, Plaintiff's back exhibited tenderness and spasms at multiple trigger points, as well as limited range of motion and his left knee exhibited tenderness. Id. Plaintiff's gait wan antalgic and a straight leg test was positive. Id. In an April 11. 2017 letter, Dr. Guy reported treating Plaintiff for injuries sustained on August 16, 2013 and opined that Plaintiff was "temporarily disabled" and "advised to abstain from work." AR. 453. Dr. Guy listed as diagnoses: left knee torn meniscus, status post partial medial meniscectomy; traumatic chondromalacia of the knees; disc herniation at L5-S1, L4-L5 and L2-L3; a disc bulge at L3-L4; and, traumatic arthritis. Id. Lumbar radiculopathy and cervical disc bulge versus herniation were to be ruled out. Id. Dr. Guy stated that Plaintiff would be re-evaluated in approximately four weeks and assessed for improvement and "return to work status." Id.

Dr. Guy administered steroid injections to Plaintiff's lumbar spine to treat localized lower back pain on April 21, 2017. AR. 456-57. Dr. Guy noted that Plaintiff failed to respond to physical therapy and pain medication and the injections were administered for pain management and "diagnostic purposes." AR. 456.

On July 11, 2017, Plaintiff complained of lower back, neck, and left knee pain as well as depression and anxiety to Dr. Guy. AR. 459-60. Upon examination. Plaintiff's back exhibited tenderness and spasms at multiple trigger points, as well as limited range of motion, and his left knee exhibited tenderness. AR. 458. Plaintiff's gait was antalgic and a straight leg test was positive. Id. Dr. Guy prescribed medication to treat Plaintiff's pain and depression and opined that he was "totally disabled." AR. 459. On July 14, 2017, Dr. Guy administered steroid injections to Plaintiff's lumbar spine to treat his localized lower back pain. AR. 461-62. Dr. Guy noted that Plaintiff had failed to respond to physical therapy and pain medication and the injections were administered for pain management and "diagnostic purposes." AR. 461. On July 21, 2017, Plaintiff reported 75% pain relief from the injections, but complained of pain. AR. 463. Upon examination, his back exhibited tenderness and spasms at multiple trigger points, as well as limited range of motion and his straight leg test was positive. Id. Plaintiff's gait was normal. Id. Dr. Guy recommended physical therapy and opined that Plaintiff was "totally disabled." Id.

In an October 24, 2017 report, Dr. Guy opined that Plaintiff could: occasionally lift/carry and push/pull up to five pounds; occasionally sit, stand, walk, reach, and perform simple grasping and fine manipulation; and never climb, kneel, bend/stoop, squat, drive a car, operate machinery, work in high temperatures or humidity, or work on wet, slippery ground. AR. 470. Dr. Guy opined that Plaintiff had reached maximum medical improvement and lost 40% of use of his left knee and could not perform work that requires lifting, pulling, pushing, or prolonged sitting. Id. Dr. Guy wrote that a functional capacity evaluation was necessary to confirm whether Plaintiff could perform any work. Id. he noted that Plaintiff traveled by car and had been taking Vicodin Extra Strength for pain. AR. 469. He also noted that Plaintiff complained of lower back pain, which radiated to his lower extremities, numbness and tingling and knee pain. Id. Plaintiff's

left knee was tender and also showed limited range of motion. Id. Muscle power testing for Plaintiff's lower extremities was rated as a 4+/5 and his gait was low and antalgic. AR. 469. Dr. Guy listed as diagnoses: left knee torn medial meniscus, status post partial medial meniscectomy with flexion; traumatic chondromalacia of the knees; disc herniation at L5-S1, L4-L5, and L2-L3; a disc bulge at L3-L4; traumatic arthritis; and reactive depression. AR. 470.

Dr. Guy submitted a "Doctor's Report of MMI/Permanent Impairment" dated November 9, 2017, to the New York State Worker's Compensation Board. AR. 466-68. The report confirmed that Dr. Guy treated Plaintiff for: 1) other intervertebral disc displacement in the lumbar region; 2) radiculopathy of the lumbar region; 3) sprain of an unspecified cruciate ligament of the left knee (at their initial encounter); and 4) chondromalacia of the left knee. AR. 466. Dr. Guy stated that Plaintiff had reached maximum medical improvement and was permanently impaired. AR. 467. Dr. Guy reported that Plaintiff had lost 40% use of his left knee. Id. He further stated that Plaintiff could: occasionally lift/carry and push/pull up to five pounds; occasionally sit, stand, walk, reach, and perform simple grasping and fine manipulation; and never climb, kneel, bend/stoop/squat, drive a car, operate machinery, work in high temperatures or humidity, or work on wet, slippery ground. AR. 468. Dr. Guy reported that Plaintiff was restricted to less than sedentary work, could not perform his past work activities, and would benefit from vocational rehabilitation. Id. Dr. Guy stated that a functional capacity evaluation was necessary. AR. 469.

On January 19, 2018, ALJ Crawley requested that impartial medical expert Louis Fuchs, M.D. ("Dr. Fuchs"), review the medical evidence in Plaintiff's file and provide an opinion in connection with Plaintiff's claim for benefits. AR. 480. In a response signed on January 31, 2018, Dr. Fuchs reported that Plaintiff's impairment limited him to lifting/carrying up to ten

pounds on a continuous basis, and up to 20 pounds occasionally. AR. 493, 500. Dr. Fuchs opined

that Plaintiff could sit, stand, and walk for one hour at a time without interruption and - in an

eight-hour-workday - sit for eight hours, stand for two hours, and walk for two hours. AR. 494.

Dr. Fuchs also stated that Plaintiff did not need a cane to ambulate and that Plaintiff could reach

overhead, and continuously reach in all other directions as well as use foot controls. AR. 494-95.

Dr. Fuchs opined that Plaintiff could never climb ladders or scaffolds, but could occasionally

climb stairs/ramps, balance, stoop, kneel, crouch, and crawl. AR. 496. He also noted that

Plaintiff had environmental limitations, including an inability to operate a motor vehicle or work

with moving mechanical parts. AR. 497. Dr. Fuchs stated that Plaintiff was not limited in his

ambulation or activities of daily living. AR. 498.

On January 21, 2018, the ALJ conducted a supplementary hearing so that Plaintiff and his

attorney could examine Dr. Fuchs with respect to his medical opinions. AR. 60-78. Dr. Fuchs

testified that based on the evidence in Plaintiff's medical file, it was possible that Plaintiff had

physical limitations and pain based on his impairments, and it was also possible that Plaintiff was

neurologically intact and did not have significant physical limitations and pain. AR. 65-73.

C.     The Hearings

On January 18, 2018, Plaintiff appeared with attorney Wayne Miller, for a hearing before

ALJ Crawley. AR. 48. Interpreter Gilda Briseno, and vocational expert Dale Pasculli were also

present. Id.

At the hearing, the Plaintiff testified as follows:

Q. On a zero to 10 scale, zero is no pain and 10 is pain so bad that you can't even talk,

can you rate the back pain for me on an average basis?

A.  For example. Right now I have pain because I've been sitting for a long time. So I could say it's like between like a five and six.

Q. […] And does it get worse than five to six?

A.  Yes, even more when it's very cold.

Q.  Okay. So it's been hurting you lately because it's been very cold here?

A.  Yes, and I have been taking Tylenol

Q.  Okay. Are you seeing a doctor for your back pain now?

A.  Yes.

Q.  What doctor do you see?

A.  Dr. Ali [PHOENTIC].

Q.  What kind of treatment do you get?

A.  Before he was giving me some injections in my back and that was really like controlling a little bit, the pain that I have in the back.

Q.  Okay. So what kind of treatment are you getting now? You said before you were getting them. Are you still getting them?

A.  Okay. Because the treatment is like by sessions, so he put me like there is a session with the three injections and then we have a break. And right now, I'm in the break.

AR. at 50-51.

Plaintiff further testified regarding his left knee:

Q.  And so you have a problem with your left knee?

A.  Yes, a lot.

Q.  You have pain?

A.  Yes.

Q.  All the time or only sometimes?

A.  Almost, like my back.

Q.  […] So what kind of treatment have you gotten on your knee?

A.  Right now I've been taking just Tylenol because I have a surgery in my left knee. And the doctor told me that a second surgery sill be need, but I haven't done it yet, so I've been thinking about that.

Q.  Okay. So you had surgery on your knee?

A.  Yes.

Q.  After the surgery, did things get better or worse?

A.  It helped a lot.

Q.  […] What kind of medication do you take now?

A.  What I'm taking always is Tylenol.

Q.  How come you don't take anything stronger than Tylenol?

A.  For a while, I took a prescription medicine, but right now what I take is Tylenol. He told me that Tylenol was fine.

Q.  Does it help?

A.  Yes. I told him it was fine.

AR. 51-53.

Plaintiff also testified that he partook in daily life activities such as washing dishes, driving approximately once every two weeks, folding laundry, sometimes cooked, and went food shopping with his wife. AR. 52-54

On June 21, 2018, following ALJ Crawley's retention of impartial medical expert Louis A. Fuchs, M.D., to review Plaintiff's claims, at Plaintiff's request, a supplemental hearing was held. Dr. Fuchs testified regarding his medical assessment of Plaintiff's condition following the review of Plaintiff's medical records. AR. 60-78; 493-502.

D.     The Commissioner's Decision

On July 10, 2018, ALJ Crawley issued his decision, concluding that Plaintiff did not meet the requirements to be found disabled under 42 U.S.C. § 423 et seq. AR. 15. As required, ALJ Crawley conducted the five-step evaluation process for determining whether an individual is disabled pursuant to 20 C.F.R. 404.1520(a). AR. 16-23. ALJ Crawley determined that Plaintiff met the insured status requirements of the Act, had not engaged in substantial gainful activity during the period of alleged disability, and had a number of severe impairments (i.e., degenerative disc disease of the lumbar spine and degenerative joint disease of the left knee).  ALJ Crawley concluded, however, that these severe impairments did not meet the severity of any one of the listed impairments included in 20 C.F.R. 404, Subpart P, Appendix 1. AR. at 17-18. Specifically, ALJ Crawley found that because the medical evidence failed to demonstrate the existence of a "'herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis,

osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture'" Plaintiff's spinal impairments failed to "meet or medically equal" any of the sub-listings of the section, and that Plaintiff's left knee impairments did not "meet or medically equal" the major dysfunction of joint category characterized by gross anatomical deformity and chronic pain/stiffness with signs of limited and/or other abnormal motion. AR. 18.

In reviewing Plaintiff's medical history and treatment (both by his personal physicians and by the consultative examiner engaged by the Administration), ALJ Crawley concluded that Plaintiff has the residual functional capacity ("RFC") to perform "sedentary work" (as defined in 20 C.F.R. 404.1567(a)), consistent with the ability to lift/carry up to 20 pounds occasionally and up to 10 pounds continuously; sit, stand or walk for one hour at a time and sit for eight hours, stand for two hours and walk for two hours in an eight-hour day; with occasional bilateral overhead reaching. AR. 18. With this conclusion in mind, ALJ Crawley found Plaintiff could not perform any of his past relevant work, but that Plaintiff had an occupational base for the full range of sedentary work in light of his age, education, work experience, and RFC, particularly in light of the testimony provided by vocational expert Dale Pasculli. AR. at 23.

DISCUSSION

I.    Legal Principles

    A.    The Standard of Review

    "A district court may set aside a Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error." Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008) (quoting Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000)).

Thus, judicial review of the Commissioner's final decision requires "two levels of inquiry." Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987). The district court "first reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); see also Arzu v. Colvin, 2015 WL 1475136, at *8 (S.D.N.Y. Apr. 1, 2015) ("First, the court must decide whether the Commissioner applied the correct legal standard.") (citing Apfel, 167 F.3d at 773); see also Calvello v. Barnhart, 2008 WL 4452359, at *8 (S.D.N.Y. Apr. 29, 2008), report and recommendation adopted, 2008 WL 4449357 (S.D.N.Y. Oct. 1, 2008) (same).

Next, the Court examines the administrative record to "'determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision[.]'" Burgess, 537 F.3d at 128 (quoting Shaw, 221 F.3d at 131). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004)). However, the Court may not properly "affirm an administrative action on grounds different from those considered by the agency." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999).

"[Substantial evidence] is still a very deferential standard of review — even more so than the 'clearly erroneous' standard.'" Brault v. Soc. Sec. Admin., Com'r, 683 F.3d 443, 448 (2d Cir. 2012). For example, "[a]n ALJ need not recite every piece of evidence that contributed to the decision, so long as the record 'permits us to glean the rationale of an ALJ's decision.'" Cichocki v. Astrue, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983)). Moreover, "[e]ven where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings 'must be given

conclusive effect' so long as they are supported by substantial evidence." Genier v. Astrue, 606

F.3d 46, 49 (2d Cir. 2010) (quoting Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982)).

       B.      Legal Principles Applicable to Disability Determinations

Under the Social Security Act, every individual considered to have a "disability" is

entitled to disability insurance benefits. 42 U.S.C. § 423(a)(1).  The Act defines "disability" as an

"inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

423(d)(1)(A). A claimant's impairments must be "of such severity that he is not only unable to do

his previous work but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §

423(d)(2)(A).

To determine whether an individual is entitled to receive disability benefits, the

Commissioner is required to conduct a five-step inquiry. First, the Commissioner must determine

whether the claimant is currently engaged in any substantial gainful activity. 20 C.F.R. §

404.1520(a)(4)(i).  Second, if the claimant is not gainfully engaged in any activity, the

Commissioner must determine whether the claimant has a "severe impairment" that significantly

limits the claimant's ability to do basic work activities. Under the applicable regulations, an

impairment or combination of impairments that significantly limits the claimant's ability to

perform basic work activities is considered "severe." 20 C.F.R. § 404.1520(c)(a)(4)(ii).  Third, if

the claimant has a severe impairment, the Commissioner must determine whether the impairment

is one of those included in the Listings of the regulations. If it is, the Commissioner will presume

the claimant to be disabled, and the claimant will be eligible for benefits. 20 C.F.R. § 404.1520(c)(a)(4)(iii).

After step three, but before step four, the Commissioner must determine the claimant's RFC; that is, the claimant's ability to perform physical and mental work activities on a sustained basis despite his impairments. 20 C.F.R. § 404.1520(e). A claimant's RFC is "the most the claimant can still do despite the claimant's limitations." 20 C.F.R. § 404.1545(a). At step four, if the claimant does not meet the criteria for being presumed disabled, the Commissioner next must determine whether the claimant possesses the RFC to perform the claimant's past work. 20 C.F.R. § 404.1520(a)(4)(iv). Fifth and finally, if the claimant is not capable of performing prior work, the Commissioner must determine whether the claimant is capable of performing other work for which there a significant number of available jobs in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make an adjustment to other work, the claimant will be found not disabled. Id.

The claimant bears the burden of proof at the first four steps. Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013). Once the claimant has established their inability to perform their past work, however, the Commissioner has the burden of showing that "there is other gainful work in the national economy which the claimant could perform." Balsamo v. Chater, 142 F.3d 75, 80 (2d Cir. 1998) (quoting Carroll v. Sec'y of Health and Human Serv., 705 F.2d 638, 642 (2d Cir. 1983)).

II.    Plaintiff's Claims

Plaintiff raises three grounds for reversing the ALJ's decision: (1) that the ALJ failed to properly evaluate the medical evidence from Plaintiff's treating physicians; (2) that the ALJ's decision was not supported by substantial evidence; and (3) that the ALJ failed to properly assess

Plaintiff's allegations with respect to his level of pain. Each of Plaintiff's arguments are discussed in turn.

     A.    <u>Proper Weight Was Not Assigned to Plaintiff's Treating Physician</u>

Plaintiff first argues that the ALJ failed to properly evaluate the medical and opinion evidence necessary to make a proper RFC determination. This is because, according to Plaintiff, the opinions of his treating physician, physiatrist Ali Guy, were never properly considered by the ALJ.

"[A] treating physician's statement that the claimant is disabled cannot itself be determinative." <u>Micheli v. Astrue</u>, 501 F. App'x 26, 28 (2d Cir. 2012) (quoting <u>Snell v. Apfel</u>, 177 F.3d 128, 133 (2d Cir. 1999)); <u>Green-Younger v. Barnhart</u>, 335 F.3d 99, 106 (2d Cir. 2003) (same). However, an ALJ "must follow" specific procedures "in determining the appropriate weight to assign a treating physician's opinion." <u>Estrella v. Berryhill</u>, 925 F.3d 90, 95 (2d Cir. 2019); <u>see also</u> <u>Ferraro v. Saul</u>, 806 F. App'x 13, 14 (2d Cir. 2020) (holding that "[u]nder Second Circuit precedent and the applicable regulations," the ALJ must follow the two-step procedure laid out in <u>Estrella</u> to determine the appropriate weight to assign to the opinion of a treating physician). "First, the ALJ must decide whether the opinion is entitled to controlling weight." <u>Estrella</u>, 925 F.3d at 95. "The opinion of a claimant's treating physician as to the nature and severity of an impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" <u>Id.</u> (alterations omitted) (quoting <u>Burgess v. Astrue</u>, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(c)(2))); <u>see also</u> <u>Lesterhuis v. Colvin</u>, 805 F.3d 83, 88 (2d. Cir. 2015) (discussing the treating physician rule); <u>Petrie v. Astrue</u>, 412 F. App'x 401, 405 (2d Cir. 2011) ("The opinion of a treating

physician is accorded extra weight because the continuity of treatment he provides and the doctor/patient relationship he develops place[s] him in a unique position to make a complete and accurate diagnosis of his patient." (quoting <u>Mongeur v. Heckler</u>, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983) (per curiam))).

"Second, if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it." <u>Estrella</u>, 925 F.3d at 95. In deciding how much weight to assign to the opinion, the ALJ "must 'explicitly consider' the following, nonexclusive '<u>Burgess</u> factors': '(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" <u>Id.</u> at 95–96 (quoting <u>Selian</u>, 708 F.3d at 418); <u>see also</u> <u>Halloran v. Barnhart</u>, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (citing 20 C.F.R. § 404.1527(d)(2)) (discussing the factors). "At both steps, the ALJ must 'give good reasons ... for the weight [it gives the] treating source's [medical] opinion.'" <u>Estrella</u>, 925 F.3d at 96 (alterations in original) (quoting <u>Halloran</u>, 362 F.3d at 32). "An ALJ's failure to 'explicitly' apply the <u>Burgess</u> factors when assigning weight at step two is a procedural error." <u>Id.</u> (quoting <u>Selian</u>, 708 F.3d at 419–20). "If 'the Commissioner has not [otherwise] provided 'good reasons' [for its weight assignment],'" the district court is unable to conclude that the procedural error is harmless, and remand is therefore appropriate, so that the ALJ can "comprehensively set forth [its] reasons." <u>Id.</u> (alterations in original) (quoting <u>Halloran</u>, 362 F.3d at 33); <u>see also</u> <u>Sanders v. Comm'r of Soc. Sec.</u>, 506 F. App'x 74, 77 (2d Cir. 2012) (noting that failure "to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand"); <u>Halloran</u>, 362 F.3d at 32–33 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s

opinion ...."). However, if a "searching review of the record" assures the court that the "substance of the treating physician rule was not traversed," the court will affirm. Estrella, 925 F.3d at 96 (quoting Halloran, 362 F.3d at 32).

A district court must ensure that the ALJ has adequately developed the record in accordance with 20 C.F.R. § 404.1520(a)(3), which requires an ALJ to consider all evidence in the case record when making a determination or decision on a claimant's disability. See Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 508–09 (2d Cir. 2009) ("[I]t is the rule in our circuit that the [social security] ALJ, unlike a judge in atrial, must [on behalf of all claimants] ... affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." (alterations in original) (quoting Tejada v. Apfel,167 F.3d 770, 774 (2d Cir.1999)). Although a "claimant has the general burden of proving that he or she has a disability within the meaning of the Act," Burgess, 537 F.3d at 128 (citing Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir. 2002)), " '[b]ecause a hearing on disability benefits is a nonadversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record,'" id. (alteration in original) (quoting Melville v. Apfel, 198 F.3d 45, 51 (2d Cir. 1999)); see also Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 33 n.1 (2d Cir. 2013) ("Unlike a judge at trial, the ALJ has a duty to 'investigate and develop the facts and develop the arguments both for and against the granting of benefits.' " (quoting Vincent v. Comm'r of Soc. Sec., 651 F.3d 299, 305 (2d Cir. 2011))). This duty is present "[e]ven when a claimant is represented by counsel." Moron v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (collecting cases); see also Eusepi v. Colvin, 595 F. App'x 7, 9 (2d Cir. 2014) ("[T]he ALJ's general duty to develop the administrative record applies even where the applicant is represented by counsel ...."); Rockwood v. Astrue, 614 F. Supp. 2d 252, 279 (N.D.N.Y. 2009) ("[A]n ALJ has an affirmative duty to develop the record, even if the claimant

is represented by counsel, if the medical record is ambiguous or incomplete." (first citing Tejada, 167 F.3d at 774; and then citing Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999))). Moreover, where the claimant proceeds *pro se*, the ALJ has a heightened duty to "protect a *pro se* claimant's rights 'by ensuring that all of the relevant facts [are] sufficiently developed and considered.'" Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990) (alteration in original) (quoting Hankerson v. Harris, 636 F.2d 893, 895 (2d Cir.1980)); see also Moron, 569 F.3d at 112–13 (holding that when a claimant waives his right to counsel and proceeds *pro se*, the ALJ has a "heightened" duty to "develop the record in light of the essentially non-adversarial nature of a benefits proceeding"). In addition, the ALJ must attempt to fill in gaps in the record. See Rosa, 168 F.3d at 79 & n.5 (explaining that the ALJ must attempt to fill "clear gaps" in the record, but "where there are no obvious gaps ... and where the ALJ already possesses a 'complete medical history,'" the ALJ is under no obligation to seek additional information (quoting Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996))); Doria v. Colvin, No. 14-CV-7476, 2015 WL 5567047, at *7 (S.D.N.Y. Sept. 22, 2015) ("The ALJ's duty to develop the record includes a duty to resolve apparent ambiguities relevant to the ALJ's disability determination.").

The duty to develop "includes ensuring that the record as a whole is complete and detailed enough to allow the ALJ to determine the claimant's RFC." Sigmen v. Colvin, No. 13-CV-0268, 2015 WL 251768, at *11 (E.D.N.Y. Jan. 20, 2015) (citing Casino-Ortiz v. Astrue, No. 06-CV-155, 2007 WL 2745704, at *7 (S.D.N.Y. Sept. 21, 2007), report and recommendation adopted, 2008 WL 461375 (Feb. 20, 2008)). Pursuant to the SSA regulations, the Commissioner is obligated to "make every reasonable effort to help [the claimant] get medical evidence from [her] own medical sources and entities that maintain [her] medical sources' evidence when [the claimant] give[s] ... permission to request the reports." 20 C.F.R. § 404.1512(b)(1); see

also Perez, 77 F.3d at 47. The Commissioner's duty to make such efforts includes the duty to

seek, as part of such medical evidence and reports, a medical source statement or functional

assessment detailing the claimant's limitations. See Robins v. Astrue, No. 10-CV-3281, 2011 WL

2446371, at *3 (E.D.N.Y. June 15, 2011) ("Social Security Ruling 96–5p confirms that the

Commissioner interprets those regulations to mean that '[a]djudicators are generally required to

request that acceptable medical sources provide these statements with their medical reports.' "

(alteration in original) (quoting SSR 96-5p, 1996 WL 374183 (July 2, 1996))). Failing to

adequately develop the record is an independent ground for vacating the ALJ's decision and

remanding for further findings. See Rosa, 168 F.3d at 83 (finding remand "particularly

appropriate" where the ALJ failed to obtain adequate information from treating physicians and

potentially relevant information from other doctors); see also Morris v. Berryhill, 721 F. App'x

25, 27 (2d Cir. 2018) ("Failure to develop the record warrants remand."); Green v. Astrue, No.

08-CV-8435, 2012 WL 1414294, at *14 (S.D.N.Y. Apr. 24, 2012) ("[F]ailure to develop the

record adequately is an independent ground for vacating the ALJ's decision and remanding the

case." (citing Moran, 569 F.3d at 114–15)), report and recommendation adopted, 2012 WL

3069570 (S.D.N.Y. July 26, 2012). Nevertheless, even where an ALJ fails to develop the opinion

of a treating physician, remand may not be required "where ... the record contains sufficient

evidence from which an ALJ can assess the petitioner's [RFC]." Tankisi, 521 F. App'x at 34.

i.  The ALJ Inappropriately Determined That Dr. Guy's Opinion is Not Entitled To
Controlling Weight

ALJ Crawley determined that,

the decisions of Dr. Guy are given less weight since they are based on limited
treatment with improvement noted. Moreover, his assessment equivocates,
because he states on multiple occasions the need to obtain a functional capacity

24

evaluation. In addition, record from the physical therapist do not support the findings made by Dr. Guy, nor do the findings made by the consultative examiner or the assessment of Dr. Fuchs.

AR. 20-21.

In determining that Dr. Guy's opinion was not going to be afforded controlling weight, the ALJ failed to demonstrate how Dr. Guy's opinion was not well-supported by medically acceptable clinical and laboratory diagnostic techniques and was not inconsistent with the other substantial evidence in the case record. See Estrella, 925 F.3d at 95.

ii.   The ALJ Erred in Assigning Little Weight to Dr. Guy's Opinion

The ALJ committed procedural error in assigning little weight to Dr. Guy's opinion because he failed to "expressly consider" the Burgess factors: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist," Selian, 708 F.3d at 418 (citing Burgess, 537 F.3d at 129), before weighing the value of the opinion. See AR. 20-21.  First, the ALJ's decision fails to indicate the length, extent, duration, or frequency of Plaintiff's treatment history with Dr. Guy. notwithstanding the fact that Dr. Guy treated Plaintiff from 2015 through at least 2017.[2] Given the extensive nature of Dr. Guy's relationship with Plaintiff, having treated him semi-frequently over the course of two years' time, the ALJ's failure to expressly weigh the value of his diagnostic insight gleaned from consistent periodic observation of Plaintiff's health against any

---

[2] Plaintiff's testimony during the January 18, 2018 hearing indicates that he still treats with Dr. Guy. However, the opinion in question was written by Dr. Guy in April of 2017, when Plaintiff had been treating with him for two years.

inconsistencies in the record deprives the court of the ability to determine accurately whether his conclusion is supported by substantial evidence.

Second, the ALJ fails to expressly consider the remaining evidence that was consistent with Dr. Guy's opinion. Specifically, Dr. Fuchs' acknowledgement that the MRI findings of the left knee could cause pain and possible limitations in standing and walking. See AR. 21. Rather, the ALJ glosses over Dr. Fuchs' assessment that "perhaps the claimant could have limitations" and focuses on the fact that Dr. Fuchs "did not make a definitive statement regarding these limitations based upon his review of the record." AR. 21.

Lastly, the ALJ fails to acknowledge Dr. Guy's specialty as a physiatrist prior to assigning little weight to his opinion even though the ALJ should "generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specially than to the medical opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5).

    iii.  The ALJ Did Not Provide "Good Reasons" For Assigning Little Weight To Dr. Guy's Opinions

Because the ALJ procedurally erred, the Court must determine whether the substance of the treating physician rule was traversed. Estrella, 925 F.3d at 96 ("Because the ALJ procedurally erred, the question becomes whether 'a searching review of the record ... assure[s] us] ... that the substance of the ... rule was not traversed ...." (alteration in original) (quoting Halloran, 362 F.3d at 32)). The Court finds that remand is appropriate as the ALJ procedurally erred and "a searching review of the record" does not otherwise provide "good reasons" for assigning little weight to Dr. Guy's opinion. Id.

Because the record indicates that MRI and radiological testing support findings of impairment to Plaintiff's left knee as well as herniated discs in Plaintiff's back, there is medically acceptable laboratory evidence to support Dr. Guy's reports and opinions. Further, the ALJ affords Dr. Fuchs' assessment much weight, however, Dr. Fuchs never physically examined Plaintiff. Dr. Fuchs' opinions and assessment is based solely on his review of Plaintiff's medical records. It is clear to this Court that the ALJ misconstrued the record and violated the treating physician rule. This is also apparent by the fact that the ALJ determined that Dr. Guy's assessments stating that Plaintiff still needs to obtain a functional capacity evaluation contributed to the little weight that the ALJ afforded Dr. Guy's opinion. Such statements by Dr. Guy in no way lessen his medical opinions. Dr. Guy is a physiatrist, performing a functional capacity evaluation is not his area of expertise. See Selian, 708 F.3d at 418 (finding that the ALJ violated the treating physician rule by "misconstru[ing] the record" when determining the amount of weight to assign the treating physician's opinion); Poles v. Colvin, No. 14-CV-6622, 2015 WL 6024400, at *4 (W.D.N.Y. Oct. 15, 2015) (holding that, where the ALJ omitted records that undermined his conclusion, the ALJ's conclusion was "improperly based on a selective citation to, and mischaracterization of, the record" and "not supported by substantial evidence" (citing Ericksson v. Comm'r of Soc. Sec., 557 F.3d 79, 82–84 (2d Cir. 2009))); In short, the ALJ's determination to give little weight to Dr. Guy's opinion is not supported by good reason because Dr. Guy's reports are consistent with the objective medical evidence in the record and ignores portions of Dr. Fuchs' testimony that supports Dr. Guy's findings.

iv. The ALJ Should Have Developed the Record to Clarify Inconsistencies

Moreover, assuming even if some of Dr. Guy's treatment notes were inconsistent, the ALJ should have developed the record to seek clarification in view of the perceived

27

inconsistencies. To satisfy his threshold duty to develop the record, the ALJ should have followed up with Dr. Guy to request supporting documentation or to obtain additional explanations for his findings. See Rosa, 168 F.3d at 79 ("Even if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from the treating physician *sua sponte*." (alterations omitted) (quoting Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998))); Ahisar v. Comm'r of Soc. Sec., No. 14-CV-4134, 2015 WL 5719710, at *12 (E.D.N.Y. Sept. 29, 2015) ("[I]f a physician's report is believed to be insufficiently explained, lacking in support, or inconsistent with the physician's other reports, the ALJ must seek clarification and additional information from the physician, as needed, to fill any clear gaps before rejecting the doctor's opinion." (quoting Correale–Englehart v. Astrue, 687 F. Supp. 2d 396, 428 (S.D.N.Y. 2010))); Vazquez v. Comm'r of Soc. Sec., No. 14-CV-6900, 2015 WL 4562978, at *17 (S.D.N.Y. July 21, 2015) ("[W]here a treating physician's opinion is 'out of sync with the treating notes, the ALJ [does] not have the luxury of terminating his inquiry at that stage in the analysis.' Rather, the ALJ must further develop the record to 'fill any clear gaps' and resolve the inconsistency." (second alteration in original) (citation omitted) (quoting Hidalgo v. Colvin, No. 12-CV-9009, 2014 WL 2884018, at *19 (S.D.N.Y. June 25, 2014))).

The ALJ makes multiple references to the "limited treatment" Dr. Guy provided Plaintiff and makes this a factor in affording Dr. Guy's opinion little weight. AR. 21. Specifically, the ALJ states, "[w]hile Dr. Guy assessed some significant limitations in functioning, this assessment is based on limited treatment." Id. The ALJ should have followed up with Dr. Guy to explain why treatment was limited if Plaintiff presented with such significant limitations. The ALJ had a duty to inquire further and failed to do so.

The ALJ's incorrect application of the treating physician rule and failure to adequately develop the record are both grounds for remand. Moreover, the Court points out that the ALJ did not identify the treating physician rule in his decision and requests that the ALJ explicitly reference this standard on remand. See Torres v. Barnhart, No. 01-6051, 2005 WL 147412, *7 (E.D.N.Y. Jan. 24, 2005). In the event the ALJ decides not to give controlling weight to the medical opinion evidence provided by Dr. Guy, the Court further requests that the ALJ address each of the factors set forth above which an ALJ is required to consider in determining how much weight to give to the opinion. Norman, 912 F. Supp. 2d at 42 (recognizing that where treating source's opinion is not given controlling weight, the Commissioner must assess the factors set forth in 20 C.F.R. § 416.927(c)(2) and must enumerate "good reasons" for the decision).

CONCLUSION

For the foregoing reasons, this Court respectfully recommends that Plaintiff's motion for judgment on the pleadings be granted and Defendant's cross-motion for judgment on the pleadings be denied. The Court further recommends that this case be remanded to the Commissioner for further proceedings in accordance with this Report and Recommendation.

OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days will preclude further review

of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").


Dated: March 31, 2021
Central Islip, New York

/s/ Anne Y. Shields
Anne Y. Shields